**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL J. KEATING, III, DENNIS A. MARTIN, PETER COCCHIA, RONALD M. LANCASTER, THOMAS J. FOURNIER, AND DENNIS A. MARTIN AS TRUSTEE ON BEHALF OF THE DANIEL J. KEATING, III IRREVOCABLE TRUSTS** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 08-3320** |
| **APPLUS+TECHNOLOGIES, INC.** | : | |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, J.** **February 4, 2009**

Plaintiffs, former stockholders of Keating Technologies, Inc. ("KTI"), filed this action against Applus+ Technologies, Inc. ("Applus") for breach of the duty of good faith and fair dealing, unjust enrichment and attorney's fees. Applus filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted in part and denied in part.

## I. BACKGROUND

The following facts are taken from the Amended Complaint (paper no. 19). Plaintiffs are former shareholders of KTI. Prior to its sale, KTI was "in the business of developing technology and methodologies to improve the testing of vehicle emissions." Am. Compl. ¶¶ 17 - 18. Plaintiffs sold their shares in KTI to Applus under the terms of a Stock Purchase Agreement ("SPA") dated December 19, 2000.[1] Am. Compl. ¶¶ 17 - 20. Under the SPA, plaintiffs are

---

[1] Plaintiffs attached the SPA to the Amended Complaint as Exhibit A (paper no. 19). Under the SPA, plaintiffs sold their shares to Agbar Automotive America, Inc.; Applus is the successor in interest to Agbar. Am. Compl. ¶¶ 18, 20; Def.'s Memorandum of Law in Support of Its Motion to Dismiss the Complaint, p. 2, n. 1 (paper no. 5) ("Applus acknowledges that it is the successor in interest to Agbar, as alleged by Plaintiff in Paragraph 2 of the Complaint.").

entitled to a share of revenue from contracts "for the design, implementation, management and/or operation of vehicle inspection programs in the United States," entered into by Applus between December 19, 2000 and December 19, 2006. Am. Compl. ¶¶ 21 - 25.

In February 2006, Applus received a request from the Illinois Environmental Protection Agency ("IEPA") "to submit a bid to implement and operate the Illinois Vehicle Inspection and Maintenance Program." Am. Compl. ¶ 3. Had Applus secured a contract to operate the IEPA program during the term of the SPA, plaintiffs would have been entitled to compensation. Am. Compl. ¶ 4. Plaintiffs allege Applus attempted to prolong the IEPA bidding process and avoid winning the contract prior to the SPA's expiration on December 19, 2006. Am. Compl. ¶ 29. Under the schedule established by the IEPA, proposals were due by April 25, 2006; the winning bid was to be announced on June 27, 2006. Am. Compl. ¶ 30. Plaintiffs claim Applus delayed submitting its initial bid until September 14, 2006. Am. Compl. ¶¶ 31- 32.

On December 11, 2006, the IEPA asked Applus to submit its "best and final offer" by December 18, 2006. Am. Compl. ¶ 31. On December 12, 2006, Applus sought and received a ten-day extension until December 28, 2006. Am. Compl. ¶¶ 33 - 35. Plaintiffs claim, "Applus deliberately delayed submitting its final bid to avoid the possibility that the contract would be awarded on or before December 19, 2006 and thus to avoid [its obligation under the SPA]." Am. Compl. ¶ 36. After the SPA provision expired, Applus lowered its final bid to exclude the cost of its obligation under the SPA; Applus had included the cost of its SPA obligation in prior versions of the bid. Am. Compl. ¶ 37. On or around June 15, 2007, Applus issued a press release announcing that it had entered into a contract with the IEPA. Am. Compl. ¶ 38.

Plaintiffs claim that, but for the alleged misconduct, they would have received more than

$10 million from Applus' contract with the IEPA. Am. Compl. ¶¶ 7, 42. Count I alleges breach of contract and breach of the duty of good faith and fair dealing; Count II alleges unjust enrichment; Count III asserts a claim for attorney's fees under the SPA.

## II. DISCUSSION

The court has subject matter jurisdiction over civil actions between citizens of different states where the amount in controversy, exclusive of interest and costs, exceeds $ 75,000. 28 U.S.C. § 1332(a). Plaintiffs allege complete diversity between the parties[2] and the amount in controversy exceeds $75,000.[3] The court has diversity jurisdiction over this action.

A federal court sitting in diversity must apply the substantive law of the forum state,

---

[2] The Amended Complaint did not allege citizenship of the parties, although Applus did not contest subject matter jurisdiction. The court, *sua sponte*, inquired into its exercise of subject matter jurisdiction; plaintiffs were ordered to file an affidavit properly setting forth the citizenship of the parties. Order, Jan. 26, 2009 (paper no. 29). Plaintiffs filed an affidavit stating their citizenship and curing the defective jurisdictional allegation. Affidavit of Dennis A. Martin in Support of Plaintiffs' Amended Complaint (paper no. 30). The affidavit is deemed to amend the pleadings. See Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997) (where plaintiff alleged states of residence rather than citizenship, court requested and accepted affidavits curing the defective jurisdictional allegation). See, e.g., Realty Holding Co. v. Donaldson, 268 U.S. 398, 399-400 (1925) (pleadings deemed amended where record as whole demonstrated subject matter jurisdiction).

[3] The Amended Complaint does not allege the amount in controversy for each plaintiff, but asserts aggregate damages in excess of $10 million. Am. Compl. ¶ 42. All eleven former shareholders of KTI who are parties to the SPA, including six shareholders whose interests are held in trust, have asserted claims in this action. Am. Compl. ¶¶ 10 - 15; SPA at p.1. Given the quantum of damages alleged and the total number of potential claimants, at least one plaintiff necessarily meets the amount in controversy requirement of $75,000.01. Because the court has subject matter jurisdiction over at least one claim, it may exercise supplemental subject matter jurisdiction under 28 U.S.C. § 1367 over claims by diverse parties that arise out of the same case or controversy but fail to meet the amount in controversy individually. Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 566 (2005) ("the threshold requirement of § 1367(a) is satisfied in cases, like those now before us, where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy").

including that state's choice-of-law rules. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Thabault v. Chait, 541 F.3d 512, 521 (3d Cir. 2008); Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007).

The SPA contains a choice-of-law provision that provides for the application of Delaware law.[4] The court will apply the law of Pennsylvania, the forum state, to determine whether the SPA's choice-of-law provision should be given effect. Under Pennsylvania law, "when a transaction bears a reasonable relation to this Commonwealth and also to another state or nation, the parties may agree that the law either of this Commonwealth or of such other state or nation shall govern their rights and duties." 13 Pa.C.S. § 1301. See Gay v. CreditInform, 511 F.3d 369, 390 (3d Cir. 2007) ("Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum."). The SPA's choice-of-law provision is enforceable under Pennsylvania law; the SPA is reasonably related to Delaware because it governs plaintiffs' contractual relationship with Applus, a Delaware corporation. The court, with the parties' agreement, will apply Delaware contract law.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

[4] Section 12.03(a) of the SPA states, "This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware (without reference to its choice of law rules)."

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (internal citations and quotations omitted). The court may not grant a motion to dismiss based on its disbelief of the complaint's factual allegations, even if it appears that recovery is remote and unlikely. Id. "The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotations omitted).

## A. Count I: Breach of Contract; Breach of the Duty of Good Faith and Fair Dealing

Applus argues that Count I should be dismissed on two grounds: (1) plaintiffs failed to allege a material breach of the SPA; and (2) plaintiffs suffered no injury as result of the allegedly wrongful conduct.

### 1. Implied Covenant of Good Faith and Fair Dealing under Delaware Law

Applus claims the express terms of the SPA entitle plaintiffs to compensation only for contracts consummated before December 19, 2006, and it is "undisputed" that Applus did not consummate the IEPA contract by that date. Plaintiffs counter that, even if Applus did not breach the express terms of the SPA, the alleged conduct violated an implied covenant of good faith and fair dealing.

Violation of the implied covenant of good faith and fair dealing does not require breach of the express terms of a contract:

> Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract. As such, a party to a contract has made an implied covenant to interpret and to act reasonably upon contractual language that is on its face reasonable. This implied covenant is a judicial convention designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain. It requires the Court to extrapolate the spirit of the agreement from its express terms and based on that "spirit," determine the terms that the parties would have bargained for to govern the dispute had they foreseen the circumstances under which their dispute arose. The Court then implies the extrapolated term into the express agreement as an implied covenant and treats its breach as a breach of the contract. The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract. Despite these restrictions, Delaware courts apply this legal theory only in narrow circumstances.

Chamison v. Healthtrust, Inc., 735 A.2d 912, 920-921 (Del. Ch. 1999), aff'd, 748 A.2d 407 (Del. 2000). The implied covenant applies "when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of . . .." Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 901 A.2d 106, 116 (Del. 2006) (internal quotation omitted). Delaware courts view the implied covenant as an "occasional necessity," "a rare and fact-intensive exercise, governed solely by issues of compelling fairness." Id.

The implied covenant has been applied to contracts in which one party is granted discretion over aspects of its own performance; without an implied duty to exercise such discretion reasonably and in good faith, the promise would be illusory. In Chamison, for example, the implied covenant was applied to an indemnification agreement for attorney's fees; the agreement had granted the promisor an unqualified right to select the promisee's counsel. Chamison, 735 A.2d at 915-16. When counsel selected by the promisor refused to assert

defenses that would have exonerated the promisee, the promisee requested new counsel; the promisor refused. The promisee retained new counsel, prevailed in the litigation and brought suit for attorney's fees under the indemnification agreement. Id. at 917. The court found the indemnification agreement had granted the promisor broad discretion in selecting counsel, but the promisor had "abused this discretion by trying to force [the promisee] to accept a defense that was markedly inferior to an existing and known alternative." Id. at 922. The court held:

> [The promisor] acted unreasonably in demanding that [the promisee] accept [its selection] as his defense counsel. By refusing such an unreasonable demand, [the promisee] did not waive his contractual right to indemnification. On the contrary, by unreasonably restricting [the promisee's] defense through manipulation of the counsel selection provision, [the promisor] violated its implied covenant of good faith and fair dealing.

Id. at 922.

Plaintiffs' allegations implicate the implied duty recognized in Chamison. Applus promised to compensate plaintiffs if it obtained "new contracts" during the term of the SPA. The express terms of the contract appear to grant Applus unqualified discretion in deciding which contracts to pursue and when to pursue them. Applus had a duty to exercise its discretion reasonably. Plaintiffs allege that Applus abused this discretion by manipulating the IEPA bidding process in bad faith:

> Applus did not want to perform its obligation under the SPA to make earn-out payments to the plaintiffs for the Illinois Program Contract, and instead wanted to keep all of the revenues from the contract for itself. Therefore, acting in bad faith, arbitrarily and unreasonably, it engaged in a concerted effort to delay the bidding process, so that it would not become a party to the IEPA contract prior to the expiration of the Earn-Out Period.

Am. Compl. ¶ 5.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing does not

require breach of the express terms of the SPA. Under Delaware law, Applus cannot avoid its contractual obligations by creating, in bad faith, an outcome that technically satisfies the express terms of the SPA, but deprives plaintiffs of their legitimate expectations. Determination of whether Applus actually engaged in the alleged conduct requires a fact-intensive inquiry not appropriate in deciding a motion to dismiss.

**2. Injury to Plaintiffs**

Applus contends the following allegations fail to state a claim that plaintiffs suffered an injury:

> 33. . . . [O]n December 11, 2006 - the IEPA requested that Applus submit a "best and final offer" for the Illinois Program by December 18, 2006.
>
> 34. One day later, on December 12, 2006, Applus asked IEPA for an extension of time in which to present its final bid for the specific purpose of avoiding [its obligation under the SPA].
>
> 35. IEPA granted Applus a ten-day extension until December 28, 2006 to submit its bid.
>
> 36. Applus deliberately delayed submitting its final bid to avoid the possibility that the contract would be awarded on or before December 19, 2006 and thus to avoid [its obligation under the SPA].

Am. Compl. ¶ 33-36. Applus argues that even if it had not requested the extension of time and had submitted its final bid by December 18, 2006, the procedures governing the IEPA bidding process would not have allowed Applus to consummate the contract by December 19, 2006; the earliest possible date would have been December 26, 2006.[5] Applus argues that, because the

---

[5] The IEPA's Request for Proposals, attached as an exhibit to the motion to dismiss, provides that: (1) receipt or notice of an award is not equivalent to a contract with the state; (2) an unsuccessful vendor may protest a proposed award within seven days of issuance; and (3) no vendor will acquire legal or equitable rights until the contract has been executed by the successful vendor and the state.

alleged manipulation in December 2006 did not cause plaintiffs' injury, Count I should be dismissed.

Plaintiffs' allegations are not limited to Applus' conduct in December 2006; they claim Applus manipulated the bidding process over a ten month period. For example, the Amended Complaint alleges that Applus delayed submitting its initial bid to the IEPA by almost five months to avoid its obligation under the SPA. Am. Compl. ¶¶ 30-32. Discovery may or may not reveal evidence to support plaintiffs' claim that, but for the alleged manipulation, Applus would have entered into a contract with the IEPA before December 19, 2006. Plaintiffs have properly alleged they were injured by the conduct of Applus. Count I will not be dismissed.

**B. Count II: Unjust Enrichment**

Applus argues that Count II should be dismissed because a claim for unjust enrichment is not cognizable under Delaware law when the complaint alleges the existence of an express enforceable agreement. Plaintiffs did not address this argument in their brief; they have waived this claim.[6] See Pennsylvania Dep't of Pub. Welfare v. United States HHS, 101 F.3d 939, 945

---

The Request for Proposals is not contained in the pleadings. "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997) (internal citations omitted). The Amended Complaint explicitly references and relies upon the terms of the Request for Proposals. See, e.g., Am. Compl. ¶¶ 26, 30.

Although the court may consider the Request for Proposals without converting Applus' motion into one for summary judgment, the Request for Proposals is not necessary to the court's decision.

[6] Plaintiffs pled their claim for unjust enrichment in the alternative. Am. Compl., preamble, ¶¶ 48-52. Had plaintiffs raised this issue in their brief, the court would have considered whether, under Delaware law, a plaintiff may assert rights under an express contract

(3d Cir. 1996) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court."). Plaintiffs do not contest the motion to dismiss Count II of the Amended Complaint; it will be dismissed.

**C. Count III: Contract Claim for Attorney's Fees**

Applus argues that Count III should be dismissed because plaintiffs cannot maintain an independent cause of action for attorney's fees and costs. Applus claims that an award of attorney's fees "would merely constitute an element of damages if Plaintiffs successfully establish that Applus breached the SPA." Def. Memorandum, p. 14 (paper no. 22). Plaintiffs argue that their claim for attorney's fees is independent and arises under a separate section of the SPA.

Plaintiffs' claim for attorney's fees and costs arises under Section 11.02(a)(i) of the SPA, providing for indemnification of losses and expenses arising out of any breach or failure to perform any covenants, obligations or agreements contained in the SPA. If plaintiffs prevail on their claim for breach of the implied covenant of good faith and fair dealing, they may be entitled to indemnification by Applus.[7] It is premature for the court to decide this issue; Count III will not be dismissed.

---

while pleading a claim for unjust enrichment in the alternative. See, e.g., Cantor Fitzgerald, L.P. v. Cantor, 1998 Del. Ch. LEXIS 97, *23 (Del. Ch. June 16, 1998). Since plaintiffs do not contest Applus' motion to dismiss Count II, the court need not consider the matter.

[7] Under Delaware law, violation of the implied covenant of good faith and fair dealing is deemed a breach of the contract itself. Chamison, 735 A.2d at 920-921.

## III. CONCLUSION

Plaintiffs have properly stated claims for breach of the implied covenant of good faith and fair dealing and indemnification of attorney's fees. Plaintiffs do not contest defendant's motion to dismiss their claim for unjust enrichment. The motion to dismiss will be granted as to Count II; it will be denied as to Counts I and III without prejudice to a motion for summary judgment. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL J. KEATING, III, DENNIS A. MARTIN, PETER COCCHIA, RONALD M. LANCASTER, THOMAS J. FOURNIER, AND DENNIS A. MARTIN AS TRUSTEE ON BEHALF OF THE DANIEL J. KEATING, III IRREVOCABLE TRUSTS** | **:** | **CIVIL ACTION** |
| **v.** | **:** | |
| **APPLUS+TECHNOLOGIES, INC.** | **:** | **NO. 08-3320** |

**ORDER**

AND NOW, this 4th day of February, 2009, upon consideration of defendant's Motion to Dismiss the Amended Complaint (paper no. 22) and plaintiffs' response thereto, following a hearing on December 4, 2008 at which counsel for all parties were present and heard, it is ORDERED that:

1. The motion is **GRANTED IN PART AND DENIED IN PART** for the reasons stated in the attached memorandum.

2. The motion is denied as to Count I and Count III.

3. The motion is granted as to Count II. Count II of the Amended Complaint (paper no. 19) is **DISMISSED**.

/s/ Norma L. Shapiro
United States District Judge